UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Allstate Vehicle and Property Insurance Company,<br><br>        Plaintiff,<br><br>vs.<br><br>Ronald Shayne Phillips, Individually, Sabria Phillips, Individually, and as Personal Representative of the Estate of Jaden Phillips, Irvin Eckrote,<br><br>        Defendants. | CA 3:22-3500-JFA<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**(Non-jury)** |

Plaintiff Allstate Vehicle and Property Insurance Company ("Allstate"), by and through its undersigned counsel, complaining of the Defendants Ronald Shayne Phillips, Individually, Sabria Phillips, Individually, and as Personal Representative of the Estate of Jaden Phillips ("Estate of Jaden Phillips"), and Irvin Eckrote ("Eckrote," collectively "Defendants"), respectfully alleges and states as follows:

## BACKGROUND

1. Allstate is an insurance company organized and existing under the laws of the state of Illinois, with its principal place of business in Northbrook, Illinois, and writes insurance policies in the state of South Carolina.

2. Defendant Ronald Shayne Phillips is an individual who is a citizen of the state of South Carolina.

3. Defendant Sabria Phillips is an individual who is a citizen of the state of South Carolina.

4. At the time of his death, the decedent, Jaden Phillips ("the Decedent"), who was an individual, was a citizen of the state of South Carolina.

5. Defendant Irvin Eckrote is an individual who is a citizen of the state of South Carolina

6. The loss and claims at issue in this case arise out of incidents that occurred in South Carolina. This case involves the interpretation of an insurance policy entered into in South Carolina and that insures interests in South Carolina.

7. Jurisdiction exists because there is complete diversity of citizenship between Allstate and the Defendants, and the amount in controversy, including the potential costs of defending and indemnifying Eckrote, potentially exceeds $75,000.00. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

8. Venue is appropriate under 28 U.S.C. § 1391 because the policy at issue in this case insures property that is located in this district and was issued in this district.

9. This is an insurance coverage action brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. §§ 2201-2202, and Federal Rule of Civil Procedure 57 to determine whether Allstate has a duty to defend Eckrote for all claims related to and arising out of the actions alleged in the underlying lawsuit styled *Ronald Shayne Phillips, Individually, Sabria Phillips, Individually, and as Personal Representative of the Estate of Jaden Phillips v. County of Richland, Richland County Sheriff's Office, Richland County Sheriff's Deputy Daniel Bridgman, Individually and In His Capacity as a Richland County Sheriff's Deputy, Richland County Emergency Services, Terra Randall, Individually and in her Capacity as Richland County EMT and/ or Paramedic, Blakely Meadors, Individually and in her Capacity as Richland County EMT and/or Paramedic, Richland County Communications/911 Center, South Carolina Department of Natural Resources, Irvin Eckrote, and John Does*, currently pending in the Court of Common Pleas for Richland County, South Carolina ("Underlying Lawsuit"). A true and correct copy of the Complaint

in the Underlying Lawsuit is attached as **Exhibit A**, and the allegations of the Complaint are incorporated as if fully stated here.

## FACTUAL BACKGROUND

A.  **Underlying Lawsuit**

10. The Estate of Phillips has filed the Underlying Lawsuit against Eckrote and other defendants asserting causes of action for the negligence/ gross negligence/ recklessness; survival action; wrongful death of the Decedent; intentional infliction of emotional distress; negligent hiring, supervision, retention, training, state created danger, and failure to intervene; and for the damages arising out of each.

11. Specifically, the Complaint in the Underlying Lawsuit alleges that on May 16, 2020, the Decedent went on a camping trip on the Congaree River in celebration of his 19th birthday and was on the "Sandbar" with Eckrote for several hours, during which time Eckrote consumed alcohol. (Complaint ¶¶ 25, 26).

12. The Complaint further alleges that at some point shortly after, the Decedent and Eckrote were involved in a single boat crash where they were the only two occupants of Eckrote's boat, and the Decedent sustained blunt force trauma to his head that ultimately led to his death on May 20, 2020. (Complaint ¶¶ 27, 28).

13. Further, the Complaint alleges Eckrote never called 911 or notified SCDNR in violation of South Carolina Code Annotated Section 50-21-130, and instead, returned to Bates Bridge Landing with the Decedent unconscious, bleeding profusely from the back of his head, snoring, and "gurgling" for air, while the floor of the boat was littered with empty beer cans, blood, vomit, and what appeared to be urine. (Complaint ¶¶ 29, 30).

14. The Complaint further alleges the defendants in the Underlying Lawsuit were negligent in responding to the Decedents injuries, causing unreasonable delay, and improperly failing to administer any sobriety tests to Eckrote. (Complaint ¶¶ 32-39).

15. Further, the Complaint alleges Eckrote violated S.C. Code Ann. § 50-21-5 *et seq*., and was negligent in operating his moving motorized water device while under the influence of drugs and/or alcohol; in operating his moving motorized water device while under the influence of drugs and/or alcohol resulting in property damage, great bodily injury and death; in failing to keep his moving motorized water device under proper control; in failing to keep a proper lookout; in operating his moving motorized water device at a fast and excessive rate of speed; in operating his moving motorized water device in a reckless and careless manner; in failing to render assistance as may be practical or necessary to Jaden Phillips; in failing to report and file a full description of the accident with SCDNR; in failing to use the degree of care and caution that a reasonable and prudent person would have used under the circumstances then and there prevailing. (Complaint ¶ 51).

16. The Complaint alleges that the actions and inactions of Eckrote resulted in the Decedent's death.

17. Allstate is currently defending Eckrote in connection with the Underlying Lawsuit under a full reservation of rights.

### B. The Policy

18. Allstate issued a homeowners' policy, policy number 830062027 ("the Policy"), to Irvin Eckrote. A true and correct copy of the Policy is attached as **Exhibit B**, and the terms of the Policy are incorporated as if fully stated here.

19. The Policy has a limit of insurance for Family Liability Protection of $300,000 per occurrence.

20. The Policy provides:

\*\*\*\*

**Section II—Family Liability And Guest Medical Protection**
**Family Liability Protection–Coverage X**
**Losses We Cover Under Coverage X:**
Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

\*\*\*\*

**Guest Medical Protection–Coverage Y**
**Losses We Cover Under Coverage Y:**
**We** will pay the reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, ambulance, hospital, licensed nursing and funeral services, and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:
1.  on the **insured premises** with the permission of an **insured person**; or

2.  off the **insured premises**, if the **bodily injury**:
    a)   arises out of a condition on the **insured premises** or immediately adjoining ways;
    b)   is caused by the activities of an **insured person** or a **residence employee**;
    c)   is caused by an animal owned by or in the care of an **insured person**; or
    d)   is sustained by a **residence employee**.

\*\*\*\*

21. The Policy includes the following definitions:

\*\*\*\*

**Agreements We Make With You**
**We** make the following agreements with **you**:
**General**

**Definitions Used In This Policy**
Throughout this policy, when the following words appear in bold type, they are defined as follows:

1. **Bodily injury**—means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
    a) any venereal disease;
    b) herpes;
    c) Acquired Immune Deficiency Syndrome (AIDS);
    d) AIDS Related Complex (ARC);
    e) Human Immunodeficiency Virus (HIV);
    or any resulting symptom, effect, condition, disease
    or illness related to a) through e) listed above.

\*\*\*\*

5. **Insured person(s)**—means **you** and, if a resident of **your** household:
    a) any relative; and
    b) any person under the age of 21 in **your** care.

\*\*\*\*

7. **Occurrence**—means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

8. **Property damage**—means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

\*\*\*\*


22. The Policy also includes the following exclusions:

\*\*\*\*

**Losses We Do Not Cover Under Coverage X:**
1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
    a) such **insured person** lacks the mental capacity to govern his or her conduct;
    b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
    c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

****

6. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

7. **We** do not cover **bodily injury** or **property damage** arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**;

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

****

**Losses We Do Not Cover Under Coverage Y:**
1. **We** do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury** is of a different kind or degree than intended or reasonably expected; or
   c) such **bodily injury** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

****

6. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

   **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**;

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

23. Eckrote was an insured under the terms of the Policy at the time of the boating accident.

24. The injuries alleged in the Underlying Lawsuit were caused by an intentional or criminal act.

25. The injuries alleged in the Underlying Lawsuit were caused by the use and/or entrustment of a watercraft powered by one or more outboard motors with more than 25 total horsepower away from the insured premises.

26. But for the use of the watercraft, the Decedent's injuries would not have occurred.

27. Allstate is entitled to a judicial declaration that it owes no duty to defend or indemnify Eckrote for the claims against him in the Underlying Lawsuit.

# FOR A FIRST CAUSE OF ACTION
## DECLARATORY JUDGMENT
### (Intentional or Criminal Acts Exclusion)

28. The allegations contained in paragraphs 1 through 27 are incorporated as if fully stated here.

29. The Complaint in the Underlying Lawsuit alleges that Eckrote violated S.C. Code Ann. § 50-21-130 in not calling 911 or notifying SCDNR after the boat crash as well as other violations of the South Carolina Boating and Safety Act of 1999.

30. Section 50-21-130, Duties of vessel operator involved in collision; offense and penalties; immunity of person rendering assistance; accident reports; suspension of privileges, states, in pertinent part,

> (A) It is the duty of the operator of a vessel involved in a collision, accident, or other casualty, if he can do so without serious danger to his own vessel, crew, or passengers, to render assistance as may be practical or necessary to persons affected by the collision, accident, or other casualty including personal injury or property damage and also to give his name, address, and identification of his vessel in writing to any person injured and to the owner of any property damaged in the collision, accident, or other casualty.
>
> (B) Any person who complies with subsection (1) of this section or who gratuitously and in good faith renders assistance at the scene of a vessel collision, accident, or other casualty shall not be liable for any civil damages as a result of the rendering of assistance or for any act or omission in providing or arranging salvage, towage, medical treatment, or other assistance.
>
> (C) In the case of a reportable accident, the operator or owner of any vessel involved shall file a full description of the accident with the department and provide any information the department may require when requested as part of the investigation within forty-eight hours of the accident. The owner or operator of a watercraft involved must furnish his name, address, and identification of his watercraft in writing to any person injured or the owner of any property damaged in the accident as soon as possible after the collision. In the event an accident results in death, loss of consciousness, or serious bodily injury, the owner or operator immediately shall notify the department.

31. Section 50-21-113. Operation of moving water device while under the influence of alcohol or drugs resulting in property damage, great bodily injury or death; penalties, states, in pertinent part,

> (A) A person who, while under the influence of alcohol, drugs, or the combination of alcohol and drugs operates a moving water device, or is in actual control of a moving water device within this State and causes great bodily injury or death of a person other than himself, is guilty of a felony and, upon conviction, must be punished by a mandatory fine

32. Such conduct on the part of Eckrote constituted intentional and/or criminal acts and/or omissions for which coverage is excluded under the Policy.

33. Accordingly, coverage is excluded under the express terms of the Policy for damages arising from intentional and/or criminal acts.

34. Because there is no coverage under the Policy, Allstate has no duty to defend Eckrote in the Underlying Lawsuit.

**FOR A SECOND CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
**(Use and/or Entrustment of a Watercraft)**

35. The allegations contained in paragraphs 1 through 34 are incorporated as if fully stated here.

36. Allstate seeks a determination from this Court whether it has a duty to defend Eckrote under the Policy in connection with the claims alleged against him in the Underlying Lawsuit.

37. Under Coverages X and Y, the Policy excludes coverage for "**bodily injury** or **property damage** arising out of the . . . use, . . . entrusting, . . . of any watercraft away from an insured premises if the watercraft . . . . is powered by one or more outboard motors with more than 25 total horsepower."

38. Under Coverages X and Y, the Policy also excludes coverage for "the negligent supervision by any insured person of any person . . . arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any . . . watercraft . . ."

39. Eckrote was operating a watercraft powered by one or more outboard motors with more than 25 total horsepower.

40. The complained of injuries and damages alleged in the Underlying Lawsuit arise from the use and/or entrusting of a watercraft powered by one or more outboard motors with more than 25 total horsepower, because the Decedent was injured as the result of a watercraft collision.

41. Accordingly, coverage is excluded under the express terms of the Policy for damages arising from the use and/or entrusting of a watercraft.

42. Because there is no coverage under the Policy, Allstate has no duty to defend Eckrote in the Underlying Lawsuit.

WHEREFORE, a justiciable controversy exists between the parties in this action arising out of these claims. Therefore, Allstate asks this Court to construe and determine the rights of the parties and to declare that:

a. The Policy issued by Allstate to Irvin Eckrote does not provide coverage for the claims asserted in the Underlying Lawsuit; and

b. Allstate has no duty to defend, and therefore no duty to indemnify Eckrote for the claims and damages asserted in the Underlying Lawsuit.

Allstate prays that it be granted the relief set forth above, the costs of this action, and any such other and further relief as this Court shall deem just and proper.

GALLIVAN, WHITE & BOYD, P.A.

By: *s/ A. Johnston Cox*
    A. Johnston Cox (Fed. I.D. No. 6534)
    1201 Main Street, Suite 1200
    Post Office Box 7368
    Columbia, South Carolina 29202
    Telephone: 803-779-1833
    Facsimile: 803-779-1767
    jcox@GWBlawfirm.com

Attorneys for Allstate Property and Casualty Insurance Company

Columbia, South Carolina
October 10, 2022